EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Anabis Vega Rivera<br><br>Recurrida<br><br>v.<br><br>Rafael A. Soto Silva<br><br>Peticionario | Certiorari<br><br>2005 TSPR 24<br><br>163 DPR _____ |

Número del Caso: CC-2003-194

Fecha: 8 de marzo de 2005

Tribunal de Apelaciones:

Circuito Regional II-Bayamón

Panel integrado por presidente, el Juez Sánchez Martínez, la Juez Cotto Vives y el Juez Vivoni del Valle.

Abogados del Peticionario:

Lcda. Xaira Santiago Acosta
Lcdo. Rafael A. Soto Silva

Abogadas de la Parte Recurrida:

Lcda. Rina Biaggi García
Lcda. Ivette Nieves Cordero
Lcda. Carmen Irene García Goyco

Materia: Liquidación de Bienes Ganaciales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anabis Vega Rivera

    Recurrida

     v.                              CC-2003-194

Rafael A. Soto Silva

    Peticionario

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 8 de marzo de 2005

Nos corresponde determinar en esta ocasión si las aportaciones al seguro social hechas por un cónyuge vigente el matrimonio, tienen la naturaleza de bien ganancial y deben incluirse en el inventario de la sociedad legal de gananciales para su colación, al momento de su liquidación.

## I

Los hechos en este caso son sencillos y sobre los mismos no hay controversia. La señora Anabis Vega Rivera y el señor Rafael Soto Silva contrajeron matrimonio el día 12 de junio de 1959, en Puerto Rico. Durante su matrimonio procrearon tres hijos, hoy todos mayores de edad. Treinta y nueve años más tarde, las partes pusieron fin a su

matrimonio decretándose disuelto el mismo mediante sentencia de divorcio el 10 de marzo de 1999.

Posterior a ello, la señora Vega instó demanda de liquidación de la sociedad de bienes gananciales ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. En la demanda instada se detallaron extensamente los haberes de la sociedad de gananciales a liquidarse. El demandado contestó la demanda aceptando algunas de las alegaciones y negando otras y, además, reconvino.

Luego de varios incidentes procesales que no es necesario detallar, en diciembre de 2001, la señora Vega Rivera solicitó al tribunal que incluyera en el inventario del caudal ganancial sujeto a liquidación, las aportaciones hechas por su ex cónyuge al seguro social federal durante la vigencia del matrimonio. Traída la controversia ante la consideración del tribunal, éste ordenó a las partes que se expresaran por escrito sobre la solicitud presentada.

En un extenso memorando, el señor Soto Silva planteó que la solicitud de la señora Vega Rivera era contraria a derecho toda vez que la legislación federal que creaba el seguro social, y su jurisprudencia interpretativa, impedían que los estados interfieran con los beneficios que concede este programa. El demandado invocó *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), para concluir que la legislación federal desplazaba la normativa estatal e impedía una determinación bajo los términos solicitados por la señora Vega Rivera.

Oportunamente, el tribunal de instancia celebró una vista para discutir la petición de la señora Vega Rivera. El 18 de octubre de 2002, el tribunal *a quo* dictó su resolución en la cual dispuso que las aportaciones al seguro social eran un bien ganancial y ordenó por lo tanto que se incluyeran en el inventario del caudal ganancial. En la resolución dictada, el foro de instancia no hizo referencia alguna al planteamiento del señor Soto Silva sobre el desplazamiento de nuestra normativa por la legislación federal.

Insatisfecho, Soto Silva acudió en petición de certiorari ante el Tribunal de Apelaciones. En su escrito recreó los mismos planteamientos que en instancia. El Tribunal de Apelaciones dictó una escueta resolución negándose a expedir el recurso solicitado donde indicó que, "el recurso de *certiorari* no aduce ninguno de los criterios enunciados en la Regla 40 del Reglamento para su expedición", y que la determinación de instancia era "esencialmente" correcta.

Por no estar conforme con lo resuelto por el foro apelativo intermedio, el 14 de marzo de 2003, Soto Silva acudió ante nosotros. En el escrito presentado señaló como error lo siguiente:

> Erró el Tribunal de Circuito de Apelaciones al evaluar todo el récord del caso, justipreciar los memorando y estimar que lo resuelto por el Tribunal de Primera Instancia es esencialmente correcto, --colacionar los pagos al seguro social a los activos gananciales para luego adjudicar derechos sobre ellos en la liquidación, aún cuando en Derecho el campo está ocupado--, no

hace determinaciones de hechos ni conclusiones de derecho, pero aplica la Regla 40 del Reglamento del Tribunal de Circuito de Apelaciones.

Expedimos el auto solicitado y, contando con la comparecencia de las partes, resolvemos.

## II.

### A.

A primera vista, tenemos ante nosotros una nueva controversia sobre el carácter --ganancial o privativo-- de las aportaciones a un plan de retiro, de pensiones o beneficios, hechas por un cónyuge durante la vigencia del matrimonio. Lo cierto es, sin embargo, que antes de atender esta controversia tenemos que analizar cómo nuestro derecho de relaciones de familia interrelaciona con la legislación federal que crea el programa de seguro social. Debemos determinar si el Social Security Act desplaza nuestra legislación en virtud de la cláusula de supremacía de la Constitución de los Estados Unidos. Constitución de los Estados Unidos, Art. VI, Cl. 6.[1]

La doctrina del desplazamiento del poder estatal por el poder federal invocada por el peticionario plantea un asunto de umbral. La primacía del derecho estatal en el ámbito de las relaciones de familia tiene que ceder ante el principio de la supremacía de las leyes del Congreso cuando una ley federal así lo ordena ocupando expresamente el campo o, cuando la ley estatal incide sustancialmente sobre

---

[1] Es inquietante que un argumento de esta importancia haya sido ignorado tanto como por el Tribunal de Primera Instancia como por el Tribunal de Apelaciones.

la política pública establecida por el Congreso en alguna legislación. *Hines v. Davinowitz,* 312 U.S. 52 (1941); *Pennsylvania v. Nelson*, 350 U.S. 497 (1952) y su progenie. Véase además, *Rodríguez Planell v. Overseas Military Sales Corp*., res. 18 de septiembre de 2003, 2003 T.S.P.R.140, 2003 JTS 141; *Hernández Villanueva v. I.P.C. Division of Comstar International Inc*., res 27 de enero de 2000, 150 D.P.R. 171, 2000 JTS 26; *Cotto Morales v. Calo Ríos*, 140 D.P.R. 604 (1996); *Bordas & Co. v. Srio. de Agricultura*, 87 D.P.R. 534, 552-53 (1963). R. Serrano Geyls, *Derecho Constitucional de los Estados Unidos y Puerto Rico,* Vol. 1, Univ. Interamericana, 2da ed., 2000, pág. 410; L. Tribe, *American Constitutional Law*, 3rd ed., Vol. 1, Foundation Press, 2000, secs. 6.28-6.30.

*Hisquierdo v. Hisquierdo, supra,* invocado por el peticionario en apoyo a su argumento de desplazamiento, es la primera decisión del Tribunal Supremo de Estados Unidos que considera la divisibilidad de un plan de beneficios del gobierno federal.[2] El caso giró en torno al plan de retiro establecido por el Congreso para empleados del sistema de ferrocarriles, conocido como el Railroad Retirement Act, 45

---

[2] Véanse además, *McCarty v. McCarty,* 453 U.S. 210 (1981); *Mansell v. Mansell*, 490 U.S. 581 (1989). En *McCarty,* el Tribunal Supremo, construyendo sobre *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), revocó la determinación de que la pensión por retiro de un miembro de las fuerzas armadas era propiedad en común del matrimonio, por lo tanto divisible. Por otro lado, en *Mansell*, se resolvió que la pensión por incapacidad de un miembro de las fuerzas armadas no era propiedad en común del matrimonio por lo tanto no era divisible.

U.S.C. secs. 231 *et seq.*, y una determinación del Tribunal Supremo de California que concluía que los beneficios concedidos por ese plan eran propiedad en común ("community property") de ambos cónyuges sujeto a división en el divorcio.

Al analizar el argumento de desplazamiento, el Tribunal Supremo diseñó el siguiente modelo de análisis dual.[3] Primero, hay que determinar si el derecho invocado --la naturaleza de propiedad en común de los beneficios del plan de pensión-- choca con las disposiciones de la legislación federal. 439 U.S. pág. 583. Segundo, determinada la existencia del conflicto, evaluar si aplicar el derecho estatal inflige grave daño a intereses claros y sustanciales del Congreso.  439 U.S. pág. 581.

Establecido ese marco conceptual, el Tribunal Supremo pasó a analizar la controversia y determinó que la llamada cláusula anti embargo ("anti-attachment clause") del Railroad Retirement Act chocaba directamente con el derecho de California.  Véase 45 U.S.C. sec. 231m.[4]  El Tribunal

---

[3] Para una discusión más abarcadora sobre el modelo de análisis diseñado en *Hisquierdo* v. *Hisquierdo*, 439 U.S. 572 (1979) para determinar si aplica o no la doctrina del campo ocupado véanse, Riddle, "Preemption of Reconcilable State Regulation: Federal Benefit Schemes v. State Marital Property Law", 34 *Hastings L. J.* 685, 697 (1982) ("*Hisquierdo* established an unprecedented standard for preemption disputes involving state marital property law."); Quirk, "State Community Property Laws: Coping with Federal Tax and Pension Laws", 19 *Gonz. L. Rev.* 481 (1984).

[4] 45 U.S.C. sec. 231m dispone en lo pertinente:
"Notwithstanding any other law of the United States, or of any State, territory, or District of Columbia, no annuity or supplemental annuity

señaló que el propósito de este tipo de cláusula era garantizar que cualquier beneficio concedido por ley lo recibiera íntegramente el beneficiario. Indicó el tribunal: "Like anti–attachment provisions generally. . . it ensures that the benefits actually reach the beneficiary. It preempts all state law that stands in its way." 439 U.S. pág. 584. De ahí se concluye, lógicamente, que la decisión de California de que los beneficios del plan de pensión le pertenecían también al cónyuge no pensionado era contraria a la cláusula anti embargo pues impedía que el beneficiario recibiera la totalidad de su pensión. 439 U.S. pág. 585.

El tribunal pasó luego a analizar si la normativa estatal infligía grave daño a intereses claros y sustanciales legislados por el Congreso en el Railroad Retirement Act, contestando la interrogante en la afirmativa. Con la aprobación del Railroad Retirement Act, el Congreso tuvo la intención de legislar un programa que sirviera de aliciente a los empleados de mayor antigüedad en el sistema ferroviario para que se acogiesen al retiro permitiendo así la renovación de la fuerza trabajadora. Por lo tanto, si un empleado retirado tenía que compartir su plan de pensión con su ex cónyuge, el incentivo para su retiro se vería afectado, lo que frustraba la intención que tuvo el Congreso al aprobar el Railroad Retirement Act. 439

_____

shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever nor shall the payment thereof be anticipated."

U.S. pág. 590. Este daño, que penalizaba a quien el Congreso pretendió proteger, era lo suficientemente grave para que se entendiera que la legislación federal desplazaba el derecho de relaciones de familia de California. *Loc. cit.* A base del anterior análisis se concluyó que el pago de la pensión era un bien privativo no sujeto a división.

Al aplicar a este caso el análisis de desplazamiento de *Hisquierdo,* se requiere que se determine, primero, si el derecho estatal invocado --el carácter ganancial de las aportaciones al seguro social-- es contrario a lo dispuesto en la cláusula anti embargo del Social Security Act[5], o a cualquier otra disposición del estatuto federal. De contestarse esa pregunta en la afirmativa, se pasaría a evaluar si la determinación de ganancialidad de las aportaciones al seguro social inflige grave daño a intereses sustanciales del Congreso según recogidos en la legislación federal. De lo contrario, el análisis del campo ocupado concluye con una respuesta en la negativa a la primera pregunta.

_____

[5] La cláusula anti embargo del Social Security Act dispone:
Section 407.  Assignment of benefits.
  (a).  In general
    The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, or garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
42 U.S.C. sec. 407(a).

Antes de hacer ese análisis, pasemos a ver cómo los estados han aplicado *Hisquierdo* a controversias relacionadas con el seguro social y la división de los haberes del matrimonio ante un divorcio.

**B.**

Debemos destacar inicialmente, que el Tribunal Supremo federal no ha resuelto específicamente si los beneficios concedidos bajo el seguro social pueden ser divididos al momento de liquidarse los bienes del matrimonio. B. Turner, *Equitable Distribution of Property*, McGraw Hill Inc., 2da ed., 1994, sec. 6.06, pág. 317. ("The Supreme Court has yet to consider whether Social Security benefits are subject to division upon divorce.") Así pues, los tribunales estatales lo que han hecho es extrapolar el análisis de *Hisquierdo*, al contexto de reclamaciones bajo el Social Security Act.

La mayoría de los tribunales estatales han resuelto que en efecto, --a la luz de lo establecido en *Hisquierdo*-- los beneficios del seguro social son privativos del beneficiario y no acrecen la masa conyugal, por lo que no están sujetos a división en ocasión de un divorcio. [6] Sostienen estos tribunales que considerar de alguna manera

---

[6] Véase,, entre otros: *In re Marriage of Rogers*, 2004 WL 2341836 (Ill.App. 4 Dist.); *In re Marriage of Crook*, 778 N.E.2d 309 (Ill. 2002); *Nelly v. Nelly*, 9 P.3d 1046 (Ariz. 2000); *Wolff v. Wolf,* 929 P.2d 916 (1997); *In re Marriage Boyer*, 538 N.W.2d 293 (Iowa 1995); *Olson v. Olson*, 445 N.W.2d 1 (N.D. 1989); *Crocker v. Crocker*, 824 P.2d 1117 (Okla. 1991); *Powell v. Powell*, 577 A.2d 576 (Pa. 1990); *Mann v. Mann*, 778 P.2d 590 (Alaska 1989); *Richard v. Richard*, 659 S.W.2d 746 (Tex. Ct. App. 1983).

el valor de ese beneficio al dividir los bienes del matrimonio contraviene la ley federal ya que ello resulta, necesariamente, en una división directa o indirecta de los mismos, contrario a lo dispuesto en la cláusula anti embargo del Social Security Act.

Otros tribunales estatales han concluido que aun cuando estos beneficios son de carácter privativo, los mismos son un factor que puede ser considerado al momento de dividir los bienes del matrimonio. Estos tribunales han dispuesto que los principios que informan la doctrina del Equity así lo permite. Sostienen que, para dividir conforme a la equidad y la justicia la propiedad del matrimonio ("equitable distribution"), es apropiado considerar todos los bienes y recursos acumulados durante el mismo lo que incluye, necesariamente, los beneficios del seguro social.[7] Véase, Turner, *op. cit.,* pág. 318. ("State courts may consider Social Security benefits as one relevant factor in dividing other marital assets.")[8]

---

[7] Véanse, e. g., *Neville v. Neville*, 791 N.E.2d 434 (Ohio 2003); *Zahm v. Zahm*, 955 P.2d (Wash. 1998); *Mahoney v. Mahoney*, 681 N.E.2d 852 (Mass. 1997); *In re Miller*, 475 N.W.2d 675 (Iowa 1991); *Pongonis v. Pongonis*, 606 A.2d 1055 (Me. 1992); *Hogan v. Hogan*, 796 SW2d 400 (Mo. 1990); *In re Marriage Meyer*, 430 N.E.2d 610 (Ill. 1981); *In re Marriage Karr*, 628 P.2d 267 (Mont. 1981), *cert. denied,* 455 U.S. 1016 (1982).

[8] Para un resumen sobre los modelos existentes en Estados Unidos para la división de los bienes acumulados durante el matrimonio véanse, Frantz, Dagan, "Properties of Marriage", 104 *Col. U. L. Rev.* 75 (2004); Vaughn, "The Policy of Community Property and Inter.-Spousal Transactions", 19 *Baylor L. Rev.* 20, 20-27 (1967); W. Reppy, C. Samuel, *Community Property in the United States*, 2da. ed., 1982.

De lo anterior surge que la normativa en Estados Unidos es uniforme en cuanto al carácter privativo de los **beneficios** que se reciben bajo el seguro social. Y lo cierto es que tiene que ser así, toda vez que la cláusula anti embargo del Social Security Act prohíbe la cesión o transferencia del **derecho a recibir pagos futuros** y prohíbe además que los **pagos recibidos o por recibirse o derechos reconocidos bajo el estatuto**, puedan estar sujetos a gravámenes, embargos o procesos legales.[9] Este lenguaje es claro; la intención del legislador fue que el beneficiario recibiese la totalidad de la pensión o renta a la que tiene derecho. Así, conforme lo resuelto en *Hisquierdo*, esta cláusula anti embargo claramente implica que estos beneficios o pagos son privativos y por lo tanto no pueden afectarse por ninguna determinación de los estados; sobre esto, el campo está ocupado.[10]

Esta disposición sin embargo, no hace referencia alguna a **las aportaciones** que hace un beneficiario al fondo del seguro social. Por lo tanto, una determinación sobre

_____

[9] Véase nota al calce número 5.

[10] Cabe señalar, que a pesar de los rigores de la cláusula anti embargo del Social Security Act, en el 1975, el Congreso enmendó la legislación, para permitir que de los pagos mensuales del beneficiario se pudiera satisfacer el pago de la pensión del cónyuge ("alimony") y la pensión alimentaria de hijos dependientes ("child support"). Véase 42 U.S.C. sec. 659. Con dicha enmienda se quiso corregir el problema de padres que, abusando de la cláusula anti embargo, no cumplían con su responsabilidad alimentaria para con sus hijos y ex cónyuges. P.L.93-647, Social Services Amendments of 1974, Senate Report No. 93-1356, Dec. 14, 1974.

la naturaleza de dichas aportaciones no está prohibida por la cláusula anti embargo. Por otro lado, hemos analizado el Social Security Act y no hemos encontrado ninguna disposición que nos impida analizar la naturaleza de las aportaciones. Tampoco hemos encontrado jurisprudencia federal o estatal que aborde este tema. A base de lo anterior, hay que concluir que, en este caso, el análisis de desplazamiento de *Hisquierdo* concluye luego de evaluar la primera parte de ese modelo de análisis dual. No existe entonces impedimento alguno para que **se evalúe la naturaleza de las aportaciones al seguro social.**

Cabe destacar aquí que, el complejo esquema que regula los beneficios del seguro social contempla la interrelación de la legislación federal con el derecho sustantivo de los estados. Veamos algunos ejemplos: La determinación de quién está válidamente casado para cualificar para los beneficios del seguro social es una determinación que se hace a base del derecho del estado. 42 U.S.C. sec. 416(h)(1)(A)(i) (2004). De igual forma, es la ley estatal la que determina quién, a pesar de no estar legalmente casado, goza de los mismos derechos que los cónyuges por lo que puede recibir los beneficios del seguro social. 42 U.S.C. sec. 416(h)(1)(A)(ii) (2004). Si el beneficiario es un hijo adoptivo, la determinación sobre la validez de esa adopción se hace a base del derecho del estado sobre este asunto. 42 U.S.C. sec. 416(e)(2)(B) (2004). Finalmente, es la ley estatal la que regula varios aspectos

relacionados con la determinación de pensión alimentaria del ex cónyuge ("alimony") y al recobro de intereses por temeridad, gastos y costas.  42 U.S.C. sec. 659 (2004).

Resulta evidente entonces que el Social Security Act permite y contempla la correlación de sus disposiciones con el derecho sustantivo de los estados en asuntos relacionados con las relaciones de familia.  Ello debe ser así porque, de ordinario, el derecho de relaciones de familia es un asunto reservado a los estados y no de la injerencia del gobierno federal.  *E. g., In re Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.") Véase además, *United States v. López*, 513 U.S. 549, 564 (1995); *Thompson v. Thompson*, 484 U.S 174 (1988); *Sosna v. Iowa*, 419 U.S. 393 (1975).

Para resumir, de lo anterior se desprende que: Primero, a base de la interpretación del Tribunal Supremo de Estados Unidos de las cláusulas anti embargo en *Hisquierdo*, cualquier plan de pensión, anualidad o retiro establecido por legislación federal que contenga una cláusula de esta naturaleza --como es el caso del seguro social-- los **beneficios que se reciben** tienen carácter privativo y no podrán ser divididos entre los cónyuges al liquidarse los bienes del matrimonio.  Este es un asunto donde claramente el campo está ocupado por la legislación federal y no hay margen de acción alguno para aplicar una

norma en contrario. Segundo, que esos mismos beneficios, bajo la doctrina del Equity, sí pueden tomarse en cuenta al momento de hacer una división equitativa de los haberes de matrimonio. Tercero, que ni el Tribunal Supremo federal ni las cortes estatales, se han expresado sobre el carácter de **las aportaciones** hechas vigente el matrimonio a un plan de pensión, de retiro o anualidad establecido mediante legislación federal, incluyendo el seguro social. Cuarto, que el Social Security Act no contiene ninguna disposición que impida se analice el carácter de las aportaciones que se hacen al fondo de seguro social. Y, por último, que el Social Security Act contempla la interrelación entre sus disposiciones con la legislación estatal relacionada con el Derecho de familia.

Resolvemos entonces que la doctrina del campo ocupado no constituye un impedimento para que evaluemos sí, a la luz del derecho sustantivo puertorriqueño, las aportaciones hechas al seguro social pueden considerarse como un bien ganancial y además, que las mismas deben incluirse en la masa a ser dividida en ocasión de la liquidación de la sociedad legal de gananciales. Ese análisis, sin embargo, ha de requerir no tan sólo que repasemos el estado de derecho prevaleciente en Puerto Rico sobre este asunto, sino, y más importante aún, que profundicemos sobre el programa del seguro social y su funcionamiento.

Veamos entonces cuál es el estado de derecho vigente en nuestra jurisdicción sobre la naturaleza de las

aportaciones a un plan de retiro o pensión, para luego atender la controversia que se nos ha planteado a la luz del sistema creado por el Social Security Act.

**III.**

En los últimos años, hemos ido matizando el contenido y alcance de las disposiciones del Código Civil que regulan el inventario y la liquidación de la sociedad legal de gananciales. Las operaciones fundamentales de la liquidación son las siguientes: la formación de inventario; la tasación de los bienes; la determinación del pasivo de la sociedad y, en su caso, el establecimiento de formas para su pago; la fijación del remanente líquido y su distribución y, finalmente, la adjudicación de bienes, por partes iguales, para su pago. El inventario deberá contener numéricamente, para su colación, las cantidades que hayan sido pagadas por la sociedad de gananciales que deban rebajarse del capital del marido o de la mujer. Art. 1317 del Código Civil, 31 L.P.R.A. sec. 3692. Véase además, A. De Cossio y Corral, *Tratado Práctico y Crítico del Derecho Civil*, Tomo L, Vol. I, Madrid, 1963, págs. 254-255.

Hemos resuelto que, aun cuando el Artículo 1320 del Código Civil, 31 L.P.R.A. sec. 3641, dispone que son bienes gananciales los adquiridos a título oneroso durante el matrimonio a costa del caudal, o aquellos obtenidos por la industria, sueldo o trabajo de los cónyuges, existen ciertos bienes que por razón de su finalidad y naturaleza

personalísima no acrecen el haber común. Específicamente hemos exceptuado de la norma general las pensiones por retiro y otros sistemas similares. *E.g.*, *Maldonado v. Tribunal Superior*, 100 D.P.R 370 (1972); *Rosa Resto v. Rodríguez Solís*, 111 D.P.R. 89, 92 (1981); *Delucca Román v. Colón Nieves*, 119 D.P.R. 720 (1987); *Benítez Guzmán v. García Merced*, 126 D.P.R.302 (1990); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R 624 (1994). En *Maldonado v. Tribunal Superior*, 100 D.P.R. pág. 375, el caso normativo sobre este asunto, explicamos la norma señalando:

> La doctrina considera que la naturaleza personalísima de estas anualidades determinan (sic) su carácter privativo. Se trata de créditos *intuitu personae* –esto es en consideración a la persona– que, por su propia naturaleza, están excluidos de la masa común.

Es esta naturaleza personalísima lo que determina su carácter privativo. En *Maldonado* concluimos que, independientemente del modo de adquisición, "el derecho a la anualidad por retiro es uno personalísimo que nunca acrece el haber común". 110 D.P.R. pág. 377.

Posteriormente, en *Rosa Resto, supra*, 111 D.P.R. pág. 92, nos reafirmamos en lo expresado en *Maldonado*. Abundamos sobre la naturaleza personalísima de las pensiones por retiro indicando que, este derecho tiene un respetable contenido ético y moral y "constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en una carga de parientes o del Estado." En *Rosa Resto*,

resolvimos que con arreglo a lo dispuesto en el inciso 2 del Artículo 1301 del Código Civil, las aportaciones que un cónyuge pensionista hace a su plan de retiro, vigente el matrimonio, son de naturaleza ganancial por lo que la sociedad de gananciales tiene derecho a un crédito por el importe total de dichas aportaciones al momento de su disolución. Aclaramos en *Rosa Resto*, que si el único bien existente para satisfacer la parte adjudicada eran los fondos de aportaciones acumuladas en el plan de retiro, "quedará diferido el cumplimiento de esa parte de la división de bienes de la sociedad." 111 D.P.R. pág. 93.

Pasemos entonces a aplicar las normas de derecho antes mencionadas a la controversia planteada en el caso de epígrafe.

**IV.**

El seguro social es uno de los programas federales de justicia social de mayor trascendencia y profundo impacto que se legislara durante el Nuevo Trato. Este es un sistema integrado de impuestos y transferencias que provee, entre otros beneficios, un ingreso mensual a trabajadores retirados así como a algunos de sus dependientes. En sus comienzos, este programa era parte de una propuesta nacional de recuperación económica cuyo objetivo primordial era proveer las garantías necesarias para evitar un estado de desamparo y dependencia en la vejez. *Economic Security Act: Hearings before House Committee on Ways and Means,* 74th Cong. 20 (1935), citado en, Liu, "Social Security and

the Treatment of Marriage: Spousal Benefits, Earnings Sharing and the Challenge of Reform", 1999 *Wisconsin L. Rev.* 1, 5 n.7.

En *Helvering v. Davis*, 301 U.S. 619 (1937), el Juez Asociado Cardozo describió con marcada elocuencia el propósito de esta legislación, señalando: "The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." *Helvering*, 301 U.S. pág. 641.

En su esencia, como dijimos, el seguro social es un sistema de seguro o ahorro público basado en impuestos, que puede ser alterado por el Congreso a su discreción. Véase, 42 U.S.C. sec. 1304 (2004); *Califano v. Boles*, 443 U.S. 282, 297 (1979) ("[T]he social security system in this country remain[s] a contributory insurance plan and [has] not become a general welfare program.") Véase además, *Fleming v. Nestor*, 363 U.S. 603, 611 (1960). El mismo goza de ciertos atributos que lo asemejan a un plan de pensión o retiro, toda vez que, al igual que éstos, el seguro social tiene como finalidad proveer a sus beneficiarios de un ingreso mínimo en la vejez.[11]

---

[11] Se estima, que los beneficios provenientes del seguro social representan, para el 62% de la población envejeciente, el 50% o más de sus ingresos; para el 26% representa más de un 90% de los ingresos; y, para un 15% de la población con derecho a recibir beneficios, el seguro social representa su única fuente de ingresos. Liu, "Social Security and the Treatment of Marriage: Spousal Benefits, Earnings Sharing and the Challenge of Reform", 1999 *Wisconsin L. Rev.* 1, 3.

El sistema de seguro social sin embargo, tiene varias particularidades que lo diferencian de un plan de pensión o retiro, como el que interpretamos en *Rosa Resto*. Primeramente, como ya indicamos, éste es un impuesto sobre nómina que se impone en virtud de legislación federal. Véase 26 U.S.C. sec. 3101 (2004), sec. 3101 del Código Federal de Rentas Internas. Por lo tanto, la aportación que se hace al mismo es una de carácter mandatorio y no una cuota que voluntariamente se paga. No hay tampoco mecanismo alguno que permita retirar las aportaciones hechas a través de los años al fondo que nutre el seguro social. De lo anterior se desprende que dichas aportaciones no constituyen un activo de la sociedad legal de gananciales sino todo lo contrario, un pasivo.

Además, los beneficios que se recibirán de esas aportaciones no serán sólo para el trabajador retirado --de cuyos salarios se retuvieron las aportaciones--, sino también para algunos dependientes de éste, incluyendo su cónyuge, ex cónyuge o cónyuge supérstite y los hijos dependientes. Estos beneficios se conocen como "beneficios derivados" pues se derivan de la dependencia que genera la relación familiar que existe entre estos beneficiarios y el contribuyente o beneficiario principal. A través de las distintas disposiciones del Social Security Act se trasluce que el Congreso ha utilizado, como criterio de dependencia para conceder los beneficios derivados, la edad y el estatus matrimonial del beneficiario dependiente. *Califano*

*v. Jobst*, 434 U.S. 47, 52 (1977). ("[Congress] has elected to use simple criteria, such as age and marital status, to determine probable dependency"). Ello supone entonces que como ocurre en este caso, de las aportaciones hechas por un cónyuge al Seguro Social el otro cónyuge ha adquirido también el derecho a recibir los beneficios del Seguro Social. Habida cuenta de lo anterior, forzoso es concluir que lo resuelto en *Rosa Resto* no es de aplicación a la situación que hoy se encuentra ante nuestra consideración.

El ex cónyuge de un trabajador retirado tiene derecho a recibir beneficios bajo este programa siempre y cuando cumpla con los requisitos del estatuto. Ello es así desde el 1965, cuando el Congreso enmendó el Social Security Act para hacer extensiva a una mujer divorciada los mismos beneficios que disfrutaban hasta ese entonces, solo las esposas o viudas de un beneficiario. A partir de ese momento, toda mujer divorciada que hubiera estado casada por espacio de veinte (20) años [12], y que dependiera económicamente de su ex cónyuge,[13] cualificaba para recibir beneficios por retiro como resultado de las aportaciones hechas por su ex marido al seguro social. Pub. L. 89-97, sec. 308(a), 79 Stat. 375-376.

---

[12] En 1973, el Congreso enmendó nuevamente el Social Security Act para reducir a diez (10) años el tiempo en que los cónyuges debían permanecer casados para que la esposa divorciada cualificara para los beneficios del seguro social. Pub. L. 95-216, secs. 336(a)(3), (B)(3), (C)(1), 91 Stat. 1547.

[13] En 1972 el Congreso eliminó el requisito de dependencia antes mencionado. Pub. L. 92-603, secs. 114(a)(b), 86 Stat. 1348.

El Informe del Senado Núm. 404, del Proyecto de Resolución de la Cámara de Representantes 6675 (H.R. 6675), explica el propósito de estas enmiendas de la siguiente manera:

> It is  not uncommon for a marriage to end in divorce  after  many  years,  when the wife is too old   to  build  up  a  substantial  social security  earnings  record  even  if  she  can  find  a job. [. . .]
>  . . .
> The bill would . . . provide that a wife´s benefit  will  not  terminate  when  she  and  her husband are divorced if they had been married for at least 20 years before the divorce. [. . .]
>  [. . .]
> **These  changes  would  provide  protection mainly  for  women  who  have  spent  their  lives  in marriages  that  are  dissolved  when  they  are  far along  in  years  —especially  housewives  who  have not  been  able  to  work  and  earn  social  security benefit  protection  of  their  own—  from  loss  of benefit rights.**

1965  U.S.C.C.A.N.  Vol.  1.,  págs.  2047-2048.  (Énfasis nuestro.)

Así  lo  ha  interpretado  el  Tribunal  Supremo  federal. En *Califano v. Jobst, supra*, pág. 52, se indicó:

> "The statute is designed to provide the wage earner and the dependent members of his family with protection against the hardship occasioned by his loss of earnings; it is not simply a welfare  program  generally  benefiting  needy persons."

Véase  además,  *Mathews v. De Castro*, 429 U.S. 181, 434-435 (1976).

Como  señalamos,  la  ex  esposa  de  un  beneficiario  del seguro  social  cualifica  para  recibir  los  beneficios  si cumple  con  varias  exigencias  del  estatuto  federal.   Como requisito  de  umbral,  una  ex  cónyuge  tiene  que  haber  estado

casada con el beneficiario por un período de 10 años o más. Además, tiene que haber estado divorciada por lo menos dos años antes de solicitar los beneficios; no puede haber contraído nuevas nupcias[14]; el ex cónyuge no puede tener derecho a recibir los beneficios del seguro social por derecho propio; o, de tener derecho, pero la cantidad a recibir es menos de la mitad del seguro social del ex cónyuge; y, debe haber cumplido 62 años. Veáse 42 U.S.C. secs. 402(b)(1)-(4) (2004).

Como vemos, el complejo sistema de seguro social provee para que de los impuestos que nutren ese fondo, reciban en su día una pensión no solo el trabajador retirado de cuyo sueldo se hicieron las aportaciones, sino también su ex cónyuge. Ello así, toda vez que el Congreso fue consciente de la dificultad que enfrentan aquellas mujeres que luego de muchos años de matrimonio, generalmente los de mayor productividad, durante los cuales se dedicaron al cuido de sus hijos en el hogar sin cotizar para el seguro social, ahora al divorciarse y en el atardecer de la vida, ven su estabilidad económica amenazada como resultado de ese divorcio. Por lo tanto, de ese sueldo que se reputa ganancial --Art. 1301(2) del Código Civil, 31 L.P.R.A. sec. 3641(2), y del cual se

---

[14] Si el cónyuge divorciado está recibiendo los beneficios del seguro social y contrae nuevas nupcias pierde el derecho a recibir tales beneficios. Si el segundo matrimonio termina, bien por divorcio, muerte o anulación, se recupera el derecho a recibir los beneficios del primer cónyuge. Si el segundo matrimonio duró diez (10) años o más, se pueden recibir los beneficios como ex cónyuge de ese segundo esposo.

retienen las contribuciones que nutren el fondo del seguro social-- el Congreso dispuso que ambos miembros de la sociedad legal de gananciales reciban, en su día, los beneficios del seguro social.

Habida cuenta de lo anterior resolvemos, que a la luz de los hechos particulares de este caso, no procede colacionar las aportaciones que el peticionario ha hecho al seguro social.

En mérito de lo anterior, revocamos la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo dispuesto en la Opinión que antecede.

Se dictará sentencia de conformidad.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Anabis Vega Rivera

    Recurrida

       v.                        CC-2003-194

Rafael A. Soto Silva

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 8 de marzo de 2005

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se revoca la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos acorde con lo dispuesto en la Opinión que antecede.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López concurre sin opinión escrita. El Juez Asociado señor Fuster Berlingeri concurre y disiente con opinión escrita a la que se une la Jueza Asociada señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Anabis Vega Rivera

    Recurrida

      vs.                            CC-2003-194

Rafael A. Soto Silva

    Peticionario


Opinión Concurrente y Disidente emitida por el Juez Asociado SEÑOR FUSTER BERLINGERI a la cual se une la Jueza Asociada SEÑORA FIOL MATTA.

San Juan, Puerto Rico, a 8 de marzo de 2005.

Como se indica en la propia opinión de la mayoría del Tribunal, ha sido doctrina firme de este Foro que las pensiones y planes de retiro son **bienes privativos**, por su naturaleza personalísima. Por ello, concurro con la parte del dictamen de la mayoría aquí de que los **beneficios** del Seguro Social federal son privativos y no pueden incluirse en el inventario del caudal ganancial sujeto a liquidación.

Del mismo modo, hemos resuelto reiteradamente que las **aportaciones** a los sistemas de pensiones y planes de retiro **que se pagan a costa del caudal común** son de naturaleza ganancial, por lo que la sociedad de gananciales **tiene derecho a un crédito**

por el importe total de dichas aportaciones al momento de su disolución. Esta importante norma tiene dos fundamentos principales. Por un lado, surge de lo dispuesto expresamente por el Código Civil de Puerto Rico en sus Arts. 1301, 1308 y 1317, 31 L.P.R.A. secs. 3641, 3661 y 3670, según lo hemos interpretado, con respecto a lo que aquí nos concierne. Rosa Resto v. Rodríguez Solís, 111 D.P.R. 89 (1981). Por otro lado, se apoya, además, en una consideración de **equidad**, puesto que habiéndose adquirido el privatísimo derecho a una pensión con fondos gananciales, es justo que al cónyuge que no es el titular de dicha pensión se le reconozca al menos un crédito por la parte correspondiente del caudal común invertido en la adquisición de la pensión referida.

Sin embargo, la mayoría del Tribunal hoy se aparta de nuestra posición histórica respecto al **crédito por tales aportaciones**, cuando son para el Seguro Social federal. El decreto mayoritario se emite a pesar de que se reconoce **que no hay nada en la legislación federal que requiera tal resultado**. No comparto esta parte del dictamen de la mayoría.

El decreto mayoritario en cuestión constituye una revocación *sub silentio* de lo que muy deliberadamente resolvimos en Rosa Resto v. Rodríguez Solís, *supra*. En ese caso, estaban en cuestión las aportaciones de un juez pagadas mediante deducciones salariales compulsorias al Sistema de Retiro de la Judicatura. Resolvimos que aunque la pensión del juez era privativa, las aportaciones mediante

las cuales se adquirió dicha pensión eran **ganaciales**, y le reconocimos el **crédito** correspondiente a su esposa. Expresamente determinamos que dichas aportaciones **tenían que ser incluidas en inventario y colacionadas en la liquidación de bienes gananciales**. Rosa Resto v. Rodríguez Solís, *supra*, pág. 93. El carácter de esas aportaciones era esencialmente igual en lo que aquí nos concierne a las deducciones salariales del Seguro Social federal del caso de autos, **por lo que deben tratarse de igual modo**.

El único fundamento formulado por la mayoría para apartarse de nuestra reiterada doctrina sobre el **crédito por las referidas aportaciones** es que la ex-cónyuge en el caso de autos, de sobrevivir por tiempo suficiente y una vez solicite los correspondientes beneficios, podría resultar favorecida también de tales aportaciones al Seguro Social federal, **si cumple con toda una serie de requisitos** tales como no haber contraído nuevas nupcias, haber cumplido al menos 62 años de edad, y no estar cualificada para recibir beneficios del Seguro Social por derecho propio. Es decir, la mayoría del Tribunal sólo ofrece una endeble justificación para apartarse de nuestra fundamental doctrina jurídica, una que depende de varias eventualidades aleatorias. Mas aun, para nada toma en cuenta la mayoría el hecho de que la ex-cónyuge en el caso de autos contribuyó durante **39 años** para hacer posible la pensión que ahora su ex-marido disfrutará por su sola cuenta. No se le da peso al hecho crucial de que esa pensión se pagó con **bienes comunes**.

Tampoco se pondera cómo compararía el monto del crédito en cuestión con el supuesto beneficio que podría recibir la ex-cónyuge del Seguro Social por las aportaciones referidas; ni se explica porqué no puede la ex-esposa obtener dicho crédito junto con el potencial beneficio del Seguro Social, en vista de la naturaleza de este programa que persigue fines de bienestar social que rebasan por mucho el entramado de las aportaciones.

En mi criterio, el claro derecho a un **crédito** por la aportación ganancial no debe conculcarse a base de la frágil consideración de que podría ser que la ex-cónyuge se beneficie de dicha aportación. Además, habida cuenta de la situación prevaleciente todavía en la mayoría de los matrimonios del país, la denegatoria del crédito que aquí nos concierne no sólo menoscaba el entramado de nuestro Derecho Civil y la equidad sino que atenta también contra la fuerte política constitucional que existe en Puerto Rico "de lograr la igualdad entre los esposos y proteger a la mujer, por tantos siglos marginada..." Carrero Quiles v. Santiago Feliciano, 133 D.P.R. 727, 735 (1993).

Por todo lo anterior, debe reconocérsele a la ex-esposa del caso de autos el crédito que le corresponde. Como la mayoría resuelve de otro modo, yo disiento con respecto a esta parte del dictamen.

Jaime B. Fuster Berlingeri
Juez Asociado